IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MATILDE R. OLIVAS, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:04-CV-511-BE |
| | § | |
| CORRECTIONS CORPORATION | § | |
| OF AMERICA | § | |

MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT

Now pending before the Court is the motion for summary judgment of defendant Corrections Corporation of America (the "Corporation"). Plaintiff Matilde Olivas ("Olivas") filed a response to the motion to which the Corporation replied. In the motion for summary judgment, the Corporation contends that there is no genuine issue of material fact on any element of Olivas's causes of action and that it is entitled to judgment as a matter of law that Olivas take nothing on his claims. The Court concludes that the motion for summary judgment is well taken and should be granted.

*Summary-Judgment Evidence*

The appendix submitted by the Corporation in support of the motion for summary judgment chiefly consists of sick call requests prepared by Olivas and responses thereto, an initial evaluation of Olivas, Texas Department of Criminal Justice Step 1 and Step 2 offender grievance forms completed by Olivas with responses, a letter to Olivas, and deposition excerpts from the depositions of Srinivas Reddy, a medical doctor; Tom Key, a dentist; mental health

professional Val W. Bass; nurse Lucinda Maulsby; and Olivas. Olivas submitted an appendix in response with copies of the sick call requests, copies of two separate polices of the Corporation related to dental care at the Corrections Corporation of America-Mineral Wells Pre-Parole Transfer facility ("Mineral Wells unit"), and excerpts of the depositions of Olivas, Maulsby, and Key. In an appendix to its reply, the Corporation submitted under seal a report of the off-site dental care provided to Mineral Wells Unit inmates during October 2002, and provided additional excerpts of the deposition testimony of Key, Reddy, and Maulsby.

### Summary-Judgment Standard

Summary judgment is appropriate when the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden of informing the Court of the basis for the motion and producing evidence which tends to show that no genuine issue as to any material fact exists and that the party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party has made such a showing, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Id.* at 322-23; *Anderson,* 477 U.S. at

2

257. Whether an issue is genuine is a determination of whether it is real and substantial, as opposed to merely formal, pretended, or a sham. *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001) (noting that only genuine and substantial issues may subject a defendant to the burden of trial)(quoting *Wilkinson v. Powell,* 149 F.2d 335, 337 (5th Cri. 1945)). A fact is material if its resolution in favor of one party might affect the outcome of the action under governing law. *See Anderson,* 477 U.S. at 248.  No genuine issue of material fact exists if no rational trier of fact could find for the nonmoving party based on the evidence presented. *See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698,712-13 (5th Cir. 1994). The Court must consider all evidence in the light most favorable to the nonmoving party. *See Id.* at 713.

*Facts*

On October 4, 2002, Olivas, while housed at the Mineral Wells unit, damaged two teeth when a locker lid fell, striking him in the mouth. Olivas testified that he reported this to an officer, who told him to fill out a sick-call request, which Olivas completed the next day and submitted on October 6th.  Olivas also maintains he told another officer, Chris Little, of the incident. The sick call request reported two broken teeth. On October 9th, Olivas was seen by a nurse who completed a Patient Care Protocal form. The nurse recorded in that Olivas reported pain of 10 on a scale of 1-10.  The nurse also noted injury to Olivas's jaw, and referred him

to be placed on the list of patients to be seen by a dentist. On October 13th, Olivas submitted another sick call request asserting that the medicine was not helping him, and that he was having trouble sleeping.   A nurse responded on that same date with a directive to Olivas to take his pain medicine three times a day as ordered.   On October 30th, x-rays and examination revealed that Olivas had anterior teeth numbers 7 and 8 broken at a mesial sizle angle (from front to back), with a nerve exposed.   Key extracted the teeth.   Subsequently, Olivas sought replacement teeth, which the Corporation initially denied.   In May 2003, Olivas submitted a sick call request alleging, for the first time, that he was depressed.   But Reddy testified that he did not believe that a replacement bridge was part of any mental health treatment plan for Olivas as the failure to have such a bridge was not causing Olivas a problem. Olivas filed this suit in 2004.   In May 2005, the Corporation provided Olivas a partial bridge.   Key testified that the bridge was a cosmetic repair and not medically necessary.

*Analysis*

The Corporation seeks summary judgment on Plaintiff's claims of violation of his constitutional rights under 42 U.S.C. § 1983, and on a state law claim of negligence.   The primary focus of the motion for summary judgment, response, and the briefing in this matter is whether there are genuine issues of material fact concerning the Corporation's potential liability under 42 U.S.C. §

1983 for the implementation of an official policy, practice, or custom that is in itself a "repudiation of constitutional rights and is the moving force of the constitutional violation." *See Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir. 1987). In *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978) the Supreme Court emphasized that a local government entity cannot be liable under § 1983 unless action in accordance with official municipal policy caused a constitutional tort. *Monell,* 436 U.S. at 691.

Although Corrections Corporation of America is a private corporation, the Corporation may be sued under 42 U.S.C. § 1983 for alleged constitutional injury, because the operation of a prison is a fundamental government function. *See generally Rosborough v. Management & Training Corp.,* 350 F.3d 459, 461 (5th Cir. 2003)("We agree with the Sixth Circuit and with those district courts that have found that private prison-management corporations and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury.") The standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function. *See Eldridge v. CCA Dawson State Jail*, No.3:04-CV-1312-M, 2004 WL 1873035, at *2 (N.D.Tex. Aug. 19,2004)(noting that the five circuits that have addressed the issue have extended *Monell* to private corporations), *findings and*

*recommendation adopted,* 2004 WL 2075423 (N.D.Tex. Sep. 16, 2004).

The overarching principle for municipal or corporate liability under 42 U.S.C. § 1983 is that an entity is not responsible for actions that might be attributed to it under principles of *respondeat superior. Monell,* 436 U.S. at 691; *see generally City of Canton v. Harris,* 489 U.S. 378, 385 (1989)(noting that § 1983 liability attaches "only where the municipality *itself* causes the constitutional violation at issue")(emphasis in original). Thus, to the extent Olivas claims liability against the Corporation based only upon the actions of employees at the Mineral Wells unit, any such claim fails as a matter of law. *see Piotrowski v. City of Houston,* 237 F.3d 567, 578*, reh'g en banc den'd,* 251 F.3d 159 (5th Cir.), *cert. den'd,* 534 U.S. 820 (2001).

It is appropriate to apply the common law standards that have evolved to determine § 1983 liability for a municipal corporation to a private corporation; thus, a private corporation performing a government function is liable under § 1983 only if three elements are found. *Id.* The first is the presence of a policymaker who could be held responsible, through actual or constructive knowledge, for enforcing a policy or custom that caused the claimed injury. *Id.* at 578-79, *citing Webster v City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984)(en banc). Second, the corporation must have an official custom or policy which could subject it to § 1983 liability. *See Victoria v. Larpenter,* 369 F.3d 475, 482 (5th Cir.

6

2004), *citing Monell,* 436 U.S. at 691-92.[1]  And third, a claimant must demonstrate that the corporate action was taken with the requisite degree of culpability, and show a direct causal link between the action and the deprivation of federal rights. *Victoria,* 369 F.3d 482, *citing Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997); *see also Piotrowski,* 237 F.3d at 579. Culpability may be shown either through an unconstitutional official policy or through a facially innocuous policy that was implemented with deliberate indifference to a known or obvious consequence that a constitutional violation would result. See *Piotrowski,* 237 F.3d at 579.   To establish the causation element, a plaintiff must show that the policy is the moving force behind the violation. *Id.* at 580.

Olivas claims liability under 42 U.S.C. § 1983 against the Corporation based upon two separate theories: (1) that he suffered a dental injury that required emergency care, and that the Mineral Wells unit failed to follow a policy to provide twenty-four hour emergency dental care to him; and (2) that although the Corporation had a policy in place requiring that dental services were to be prioritized based upon a "Priority Classification System," in practice the Mineral Wells unit failed to prioritize dental injury,

---

[1]Such official policy could be found in policy statements or regulations, or through a persistent widespread practice, that although not officially adopted as a promulgated policy, is so common and well settled that if represents corporate policy. *Piotrowski,* 237 F.3d at 579.

subjecting Olivas to unneeded delay in receiving dental treatment.[2]

At the time of Olivas's injury, the Corporation maintained policies applicable to the Mineral Wells unit specific to the provision of dental care. CCA Corporate and Facility Policy 13-13 required that twenty-four hour coverage must be available for dental emergencies. In separate CCA Policy 13-14, emergency treatment was to be given first priority:

> PRIORITY 1 CARE (EMERGENCY TREATMENT). Individuals requiring emergency treatment for relief of acute oral and maxillofacial conditions characterized by:
>
> 1. Postoperative uncontrolled bleeding.
> 2. Fracture of the mandible, maxilla or zygomatic arch.
> 3. Avulsed dentition.
> 4. Intraoral lacerations that require suturing to include the vermilion border of the lip.
> 5. Facial swelling from acute dental abscess and infection.

Furthermore, Policy 13-13 provided that for a dental emergency the inmate would be taken to a designated outside source, which at the Mineral Wells unit was Spencer Baum, DDS, or if he was unavailable, to the Palo Pinto General Hospital Emergency Room.

Olivas contends that the practice at the Mineral Wells unit was neither to provide emergency dental care, nor to view any dental injury as an emergency. But Maulsby testified that she understood a dental emergency to involve avulsed dentition

---

[2]The Corporation did not challenge whether Olivas had identified a policymaker who could be held responsible, through actual or constructive knowledge, for implementing the allegedly unconstitutional policies or practices.  Since the Corporation chose not to pursue this angle of defense, the Court will not address it. *See Piotrowski,* 237 F.3d at 579 (noting that identifying a policymaker "is not an opaque requirement.")

accompanied by extreme bleeding that would cause difficulty swallowing or breathing. She said that the practice at the Mineral Wells unit is to treat such a dental emergency in the same manner as any medical emergency, because if the injury required immediate transfer to a medical facility, a dentist would not need to be involved.

Olivas has not provided any contravening evidence that a dental injury requiring emergency care must be evaluated by a dentist. The Mineral Wells unit's policy references contact with a dentist if available. That the Mineral Wells unit has a practice of immediately referring these injuries to an on-call physician and to an emergency room does not undermine the availability of medical care for severe dental injuries. The Eighth Amendment protects an inmate from improper medical care, but only if the care is "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). But mere disagreement with the course of medical treatment does not state a claim for Eighth Amendment deliberate indifference to medical needs. *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997). Rather, a practice that provides a prisoner access to medical attention for any emergency medical need could not be said to be unconstitutional. *See generally Graham v. County of Washtenaw,* 358 F.3d 377, 385 (6th Cir. 2004) ("[W]here a prisoner has received some medical attention and the dispute is over the

adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.")

Furthermore, Olivas has not presented evidence that the injury to his teeth was a dental emergency as defined under the Corporation's policies or standard medical practice.  Olivas does not contest the Corporation's explanation that "avulsed dentition" is complete tooth displacement.  Maulsby testified that an "avulsed dentition" is a tooth that has been "ripped out," as distinct from a "fractured dentition" referring to a cracked tooth.  She also stated that two broken teeth would not require emergency dental care. Although treating dentist Key, designated as an expert for Olivas, testified that trauma or pain could require emergency treatment, he also said that he had never seen a patient on an emergency basis for a broken tooth.  Key also stated that he would try to promptly see a patient of his that complained of a hurting tooth, but expressly limited that statement to his outside patients not within the Mineral Wells facility. Olivas testified that when he initially reported the incident, he did not seek to go to the medical department for emergency treatment.  He further said that in the days immediately after the injury, he did not suffer pain requiring more than over-the-counter medicine. Although Olivas indicated in the October 13th sick call request that the medicine was inadequate, in response a nurse directed him to take the

medicine three times a day as ordered.  Olivas did not submit any other written requests for treatment prior to the October 30th dental examination.  On this record, there is no genuine issue of material fact that Olivas's broken teeth did not constitute a dental emergency requiring emergency dental care.

Because there is no genuine issue of material fact as to whether Olivas sustained an injury requiring emergency care and as to the constitutionality of providing emergency care for dental injury through an emergency room, the Corporation is entitled to judgment as a matter of law.

The second theory of recovery under 42 U.S.C. § 1983 against the Corporation is that although the Corporation had a policy in place requiring the prioritization of dental injury, the practice at the Mineral Wells unit was not to prioritize the dental patients, resulting in Olivas waiting twenty-one days from initial nurse examination for dental treatment, and suffering unnecessary pain as a result.  Policy 13-14 defines a Priority Classification for Dental Treatment that lists four care priorities from the highest being emergency to the lowest being elective. Emergency dental treatment is listed first, urgent dental treatment second, and routine dental treatment listed third, followed by elective. The policy defines urgent care to include acutely or traumatically fractured dentition. Maulsby testified that a "fractured dentition" meant to her a cracked tooth. She also said that an inmate with

Olivas's complaints would be classified as requiring "urgent" care. But Maulsby acknowledged that she had never contacted a dentist about prioritizing an inmate on the dental list, and that she viewed each dental injury as either a priority two-urgent care or an emergency that would require treatment in an emergency room. She also acknowledged that no inmate had ever been advanced on the dental list.

Olivas was first seen after the October 4th accidental injury to his teeth on October 9th, with the nurse's note indicating that he had then been placed on the "dental list." Also, in response to Olivas's October 13th sick call request, the same nurse indicated again that he was on the dental list. Yet, Olivas was not taken to the dentist until October 30, 2002. Records of dentists Baum and Key for their treatment of Mineral Wells unit inmates in the relevant time period indicate that between October 13 and October 30, 2002, as many as 25 additional Mineral Wells unit inmate patients were seen, with many of those apparently also having teeth removed.[3]

It appears there may be genuine issues of fact material to the issue of whether the Mineral Wells unit's practice of considering all inmates with dental problems within one treatment priority category could be said to be a moving force behind any violation of

---

[3]The CCA Custom Report of all [dental] Activity for a Specific Coverage was provided as a sealed document. The entry for Olivas includes "single tooth - 7" apparently to denote the removal of tooth number 7. Similar entries referring to a particular tooth number are listed for a number of other inmates treated in the three weeks of October 2002 prior to Olivas's treatment.

Olivas's rights resulting from a delay in medical treatment. Maulsby acknowledged that dental injuries are common, noting that the majority of the medical needs of the inmates are for dental care. The record reflects that the personnel at the Mineral Wells unit are aware of the priority classification system. Policy 13-14, however, is specific, requiring a determination of urgent dental care (acute/traumatically fractured dentition) over routine dental care (routine extractions). Without knowing the exact nature of the dental injury to the other inmates and when each was placed on sick call, it is impossible to determine whether the practice resulting in a twenty-one day wait for dental treatment for Olivas is a violation of existing policy of the Corporation sufficient to expose it to liability.

Even to the extent there are fact issues concerning whether the Corporation engaged in a practice of failing to properly prioritize dental injury, that practice cannot be said to be deliberately indifferent to Olivas's serious medical needs. Olivas has presented no evidence to establish that there are genuine issues of material fact on the high degree of culpability requisite against a corporation. *Piotrowski,* 238 F.3d at 580 (noting that deliberate indifference to a known or obvious consequence that a constitutional violation would result is a stringent test, and a "showing of simple or even heightened negligence will not suffice" to prove such liability), quoting *Bryan County,* 520 U.S. at 407. Olivas fails to establish that he suffered the requisite level of harm as the result of any delay in providing treatment. In cases

which arise from allegations of delayed medical attention rather than a clear denial of medical treatment, a plaintiff must demonstrate that he suffered substantial harm from the delay in order to state a claim under the Eighth Amendment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir.1993); *see generally Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999)("Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems"), *citing Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 & n. 21 (11th Cir.1994) (collecting cases)).

With regard to the first few days after the October 4th injury, Olivas testified that he had no pain that could not be relieved by over-the-counter medication, which he took. Furthermore, although he indicated that between October 13th and October 30th, he complained to staff about the dental problem, he did not complain of ongoing pain, submit any additional sick call request, or submit a grievance. By his own admission, he was not suffering any pain that could be said to rise to the level of substantial harm. Olivas's claims of delayed medical care resulting from the Mineral Wells unit's practice of failing to prioritize dental patients does not amount to a constitutional violation.[4]

_____

[4]The Court notes an additional reason that Olivas could not recover compensatory damages. The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The injury required by this statute "'must be more than de minimus [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999)

Olivas also asserted a state law claim for negligence. In his deposition, Olivas acknowledged that his negligence claim was based upon his allegation that he was not provided proper medical care because the Mineral Wells unit did not have a dentist on-site. As such, Olivas's negligence claim is necessarily a medical negligence or medical malpractice claim.  To prevail on a cause of action for medical malpractice under Texas law, the cause must be brought against a physician or health care provider. *Johnson v. Transplantation Research Foundation,* No.14-03-00968-CV, 2004 WL 2749149 (Tex. App.-Hous.[14th Dist.] 2004), *citing* TEX. CIV. PRAC. & REM. CODE ANN. § 74.004(a)(Vernon 2005).  The Corporation is not a "health care provider" or "health care institution" as those terms are defined under Texas law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A) and (B)(Vernon 2005). Thus, as Olivas's only basis for his negligence cause of action is a claim of inadequate medical care, and the Corporation is not a health care provider under Texas law, it is entitled to judgment as a matter of law on such cause of action.[5]

Therefore, it is ordered that Corrections Corporations of

_____

(quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997)) (alteration in original).  Olivas's allegation that he suffered some pain, and later suffered depression and emotional injury resulting from the loss of his teeth, is insufficient to establish "physical injury" under the PLRA. *See Morgan v. Dallas County Sheriff Dep't*, No. 3-04-CV-2172-D, 2005 WL 57282 at *2 (N.D.Tex. Jan.11, 2005), rec. adopted, 2005 WL 2075796 (N.D.Tex. Aug.26, 2005) (allegation of "undue pain ... on a regular basis" insufficient to establish physical injury).

[5]Olivas did not respond to the Corporation's arguments for summary judgment on this cause of action. *See* FED R. CIV. P. 56(e).

America's August 15, 2005 Motion for Summary Judgment [docket no. 56] be, and is hereby, granted.

It is further ordered that plaintiff Olivas take nothing on his claims against defendant Corrections Corporation of America, and that such claims, be and they are hereby, dismissed with prejudice.

SIGNED January 12, 2006.


_____/s/ Charles Bleil_____
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE